KELLY H. ARMSTRONG (SBN 213036)
THE ARMSTRONG LAW FIRM
1592 Union Street, 1st Floor
San Francisco, Ca  94123
Telephone; (415) 928-1293
Facsimile:  (415) 928-1294

Attorneys for Plaintiff
LAWRENCE ROMANECK

## IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

## IN AND FOR THE COUNTY OF SAN FRANCISCO

| | |
|---|---|
| LAWRENCE ROMANECK, an individual, | Case No. CGC 05-439649 |
| Plaintiff, | UNLIMITED JURISDICTION |
| vs. | **AMENDED COMPLAINT FOR DAMAGES:** |
| DEUTSCHE ASSET MANAGEMENT, a Delaware corporation, DEUTSCHE BANK AG, a New York corporation, DEUTSCHE INVESTMENT MANAGEMENT AMERICAS, INC., a corporation, SCUDDER DISTRIBUTORS, INC., a corporation, TOM WINNICK, an individual, INDIVIDUAL DOES I-XV and CORPORATE DOES XVI-XXV, inclusive | (1) WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY; (2) WHISTLEBLOWER RETALIATION- CAL. LABOR CODE § 1102.5; (3) DISABILITY DISCRIMINATION – FEHA; (4) DISABILITY DISCRIMINATION – FAILURE TO ACCOMMODATE – FEHA; (5) DISABILITY DISCRIMINATION – FAILURE TO ENGAGE IN INTERACTIVE PROCESS – FEHA; (6) FAILURE TO TAKE ALL STEPS - FEHA (7) RETALIATION – FEHA; (8) AGE DISCRIMINATION – FEHA; (9) INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS; (10)   DEFAMATION; (11) CAL. LABOR CODE § 1050; (12)   BREACH OF IMPLIED CONTRACT (13)   BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING (14)   MISREPRESENTATION/FRAUD/ DECEIT |
| Defendants. | **JURY TRIAL DEMANDED** |

1

Plaintiff alleges as follows:

**INTRODUCTION**

1.    This is an action for damages due to (1) Wrongful Termination in Violation of Public Policy; (2) Whistleblower Retaliation- Cal. Labor Code § 1102.5; (3) Disability Discrimination – The California Fair Employment and Housing Act (hereinafter "FEHA"); (4) Disability Discrimination – Failure to Accommodate – FEHA; (5) Disability Discrimination – Failure to Engage in Interactive Process – FEHA; (6) Failure to Take All Steps; (7) Retaliation – FEHA; (8) Age Discrimination – FEHA; (9) Intentional Infliction of Emotional Distress; (10) Defamation; (11) Cal. Labor Code § 1050; (12) Breach of Implied Contract; (13) Breach of Implied Covenant of Good Faith and Fair Dealing and (14) Misrepresentation / Fraud / Deceit.

2.    This action arises out of events involving Plaintiff LAWRENCE ROMANECK and defendants DEUTSCHE ASSET MANAGEMENT, a Delaware corporation, DEUTSCHE BANK AG, a New York corporation, DEUTSCHE INVESTMENT MANAGEMENT AMERICAS, INC., a corporation, SCUDDER DISTRIBUTORS, INC. (hereafter collectively referred to as "defendants" or "DEUTSCHE".)  The unlawful conduct which gives rise to this lawsuit occurred within the City of San Francisco, California, in the County of San Francisco, and therefore arose within this judicial district.

**THE PARTIES**

3.    Plaintiff LAWRENCE ROMANECK (hereafter "Plaintiff" or "ROMANECK") is a 56 year old male formerly employed by defendants.  Plaintiff ROMANECK began working with defendants on or about October 9, 1996 until on or about May 12, 2004 as Director of Sales for the Western Region in San Francisco, California.  ROMANECK entered into employment

and was subjected to the wrongful conduct and discriminatory actions alleged herein in San Francisco, California.  Plaintiff exhausted his administrative remedies by timely filing a complaint with the Department of Fair Employment and Housing against each defendant and has received a right to sue letter attached hereto as Exhibit A.

4.      Defendant Deutsche Bank AG was at all times relevant herein a corporation duly organized and existing under the laws of the State of New York.  Deutsche Bank AG maintained a principal place of business within San Francisco County at all times relevant herein.

5.      Defendant Deutsche Asset Management was at all times relevant herein a Delaware corporation duly qualified to do business in California as a foreign corporation.  Said defendant is a member of the Deutsche Bank Holding Group.

6.      Defendant Deutsche Investment Management Americas, Inc. was at all times relevant herein as a corporation duly qualified to do business in California as a foreign corporation.  Said defendant is a member of the Deutsche Bank Holding Group.

7.      Defendant Scudder Distributors, Inc. was at all times relevant herein a corporation duly qualified to do business in California as a foreign corporation.

8.      Plaintiff is informed and believes and thereon alleges that defendant TOM WINNICK (hereafter "WINNICK") was at all times relevant herein an individual, managing agent and supervisor of ROMANECK and employed as Managing Director for defendants and each of them.

9.      Plaintiff is ignorant of the true names and capacities of the defendants sued herein as DOES 1 through 50 and CORPORATE DOES 51-100 and therefore sues them by such fictitious names.  Plaintiff is informed and believes and thereon alleges that said defendants are

in some manner legally responsible for the activities and damages alleged herein. Plaintiff will amend this Complaint to allege their true names and capacities when ascertained.

10.    Plaintiff is informed and believes and thereon alleges that at all times herein mentioned each of the defendants was acting as the partner, agent, servant, and employee of each of the remaining defendants, and in doing the things alleged herein was acting within the course and scope of such agency and with the knowledge of the remaining defendants.

## GENERAL ALLEGATIONS

11.    Plaintiff incorporates by reference the factual allegations of paragraphs 1 through 10 above.

12.    Plaintiff LAWRENCE ROMANECK (hereinafter "Plaintiff" and/or ROMANECK") is a 56 year old former police officer, law abiding Christian who attends church, loyal husband and father of three daughters. He is the son of elementary school teachers in San Francisco, California. In addition to working in law enforcement, ROMANECK obtained a Bachelors of Arts in Business Administration and Masters in Business Administration degree before embarking upon a highly acclaimed career in the securities industry. ROMANECK obtained his Series VII securities license in 1977. ROMANECK also holds a Series XXIV Principals license, which allowed him to supervise other securities employees.

13.    ROMANECK worked as one of the top performers in the securities industry for over 25 years. In contrast to the vast majority of securities salespersons who receive complaints and citations for customer complaints during their careers, ROMANECK never received any complaints regarding his professional conduct until he participated in the Securities and Exchange Commission's ("SEC") investigation of DEUTSCHE's trading abuses in the mutual fund industry by telling the truth regarding DEUTSCHE's improper conduct. DEUTSCHE then

destroyed ROMANECK's career by filing a false document with the National Association of Security Dealers ("NASD") against him, which it refuses to expunge despite its full knowledge that its contents are untrue.

14.    Prior to the SEC investigation, ROMANECK experienced a steady stream of positive performance reviews, professional commendations, promotions and increased income, which made him a high income earner.  ROMANECK was one of only a select few promoted by DEUTSCHE to be one of its Directors within the United States and a top performer during his entire course of employment.  ROMANECK's boss, defendant WINNICK, gave him positive performance reviews over the last several years he was under his supervision at DEUTSCHE.

15.    However, following ROMANECK's participation in the SEC investigation and stated intent to DEUTSCHE and WINNICK that he: (1) would tell the truth despite DEUTSCHE's pressure to manipulate his statements to protect them from liability and (2) would not allow DEUTSCHE to influence what he stated to the SEC because he would tell them everything he knew about DEUTSCHE's involvement with market timing, DEUTSCHE terminated him and blacklisted him in the securities industry by filing a Form U5 Uniform Termination Notice, which falsely insinuated ROMANECK engaged in improper conduct when he would not agree to limit his statements to just one case involving market timing and DEUTSHCE to the SEC.  In fact, ROMANECK reported another market timing problem to WINNICK, which involved the International Index Fund.  That incident was brought to ROMANECK's attention by a shareholder who lost money due to the improper practices.

16.    ROMANECK told the truth because he believed it was the right thing to do and because he needed to defend himself against charges of wrongdoing.  ROMANECK told WINNICK he did not do anything wrong and he would not allow anyone to make him a

scapegoat for someone else's wrongdoing. WINNICK responded, "We'll see."  ROMANECK
has attempted to obtain employment through several different securities entities, but he has been
compelled to divulge the contents of the U5 Form filed against him by DEUTSHCE and is
unemployable due to its false contents.

17.     This case involves a term known within the securities industry as "market
timing," of mutual funds, which is known as rapid in-and-out trades, frequently prohibited
because it can disadvantage ordinary shareholders.  Many mutual fund companies such as
DEUTSCHE previously allowed favored clients to engage in market timing.  It is estimated that
market-timing abuses cost fund investors approximately five billion dollars per year.  In 2003,
when the SEC realized how widespread market timing abuses were, it began investigating
several of the nation's largest mutual fund companies, including DEUTSCHE.

18.     DEUTSCHE  then embarked on a campaign to target ROMANECK to take the
fall for market timing.  Beginning in Winter 2003, ROMANECK repeatedly informed
DEUTSCHE's Compliance and Human Resources Departments that he was being harassed by
DEUTSCHE Legal over third parties' market timing violations.  However, both departments
failed to acknowledge ROMANECK's claims.  DEUTSCHE Legal informed ROMANECK that
DEUTSCHE did not care about the consequences of the unfounded charges to ROMANECK's
life or career because they had 55,000 employees to protect.  From 2003 through present,
approximately 20 mutual fund companies, including but not limited to Franklin Templeton,
Putnam, Strong and PIMCO were allowed to settle with the SEC regarding their market timing
abuses by paying fines totaling over $2,000,000,000.

19.     The San Francisco Chronicle reported May 18, 2005 that Bank of America settled
with the SEC and New York Attorney General Eliot Spitzer for late trading and market timing

abuses for $675,000,000.  DEUTSCHE also attempted to settle quickly with the SEC by using

ROMANECK as a scapegoat and claiming he was the only one involved with market timing.

However, the trading agreement documentation relied upon by DEUTSCHE as proof of

ROMANECK's market timing misconduct was drafted, signed and negotiated entirely by

DEUTSCHE Senior Management, not ROMANECK.  DEUTSCHE's involvement with market

timing was deemed so widespread and egregious after ROMANECK informed the SEC that

DEUTSHCE had lied to them about the scope of its involvement with market timing practices

that the SEC has not allowed it to settle in contrast to several of the nation's other multi-billion

dollar mutual fund companies.

20.     After the SEC commenced its investigation of DEUTSCHE, ROMANECK

produced several market timing and securities documents to them for their investigation pursuant

to the SEC's request.  ROMANECK was also ordered to produce several securities documents to

DEUTSCHE's counsel for their scrutiny.   On November 10, 2003, ROMANECK was further

ordered to meet with DEUTSCHE's legal counsel and counsel from Morgan, Lewis & Bockius

at their law firm in San Francisco, California.  ROMANECK was cross-examined for two and

one half hours about his involvement with market timing.

21.     Counsel improperly insinuated ROMANECK engaged in wrongdoing regarding

market timing with persons from an investment firm suspected of market timing.  ROMANECK

has never participated in any market timing activities.  In fact, ROMANECK reported market

timing activities to DEUTSCHE on several occasions in order to prevent further wrongdoing.

DEUTSCHE paid for the attorney hired by ROMANECK to represent him before the SEC.  The

attorney paid for by DEUTSCHE was present when ROMANECK informed the SEC that

DEUTSCHE was lying to it regarding the scope of its involvement with market timing because DEUTSCHE's involvement was significantly more widespread than indicated.

22.     In March 2004, ROMANECK was informed by DEUTSCHE that he would be receiving a subpoena to testify before the SEC and the New York Attorney Generals Office headed by Attorney General Eliot Spitzer.  DEUTSCHE attempted to influence ROMANECK's testimony, but ROMANECK refused and reiterated he would only tell the truth and everything he knew about DEUSTCHE and market timing.  DEUTSCHE also demanded that ROMANECK show them the SEC subpoena.

23.     DEUTSCHE was extremely concerned about what ROMANECK would say to the SEC and repeatedly asked him over and over what he was going to say.  ROMANECK repeatedly refused to specify exactly everything he was going to say regarding market timing abuses throughout the company.  DEUTSCHE continued to try to pressure ROMANECK who continued to resist, despite the insinuations of negative repercussions for not being a DEUTSCHE "team player."  DEUTSCHE terminated ROMANECK shortly after he refused to submit to DEUTSCHE's pressure regarding his testimony.  ROMANECK did testify truthfully before the SEC and the New York Attorney General's Office for four hours.

24.     On April 5, 2004, ROMANECK was seriously injured in the workplace when he attempted to lift a heavy box of DEUTSCHE sales materials in the workplace and injured his arm.  He suffered and continues to suffer nerve damage, including but not limited to the ulnar/spinal nerve and carpal and cubic tunnel syndrome.  Despite his injury, ROMANECK just needed a temporary leave from work after the initial injury and then was still able to perform his primary job functions as to sales.  DEUTSCHE provided the SEC and New York Attorney

Generals Office with information regarding ROMANECK's workers compensation claim for his injured arm, which caused them to cross-examine him regarding the filing of a fraudulent claim.

25.     ROMANECK's physician placed him on disability leave and prescribed pain medication.  ROMANECK informed DEUTSCHE and WINNICK of his injury and need for disability leave, requesting accommodation of his injury and attempted to engage in an interactive process regarding his disability.  WINNICK did not want ROMANECK to take time away from work for disability leave and medical treatment and was greatly dismayed.

26.     After DEUTSCHE was informed of ROMANECK's disability, he was ordered to appear for a pretend investment meeting with WINNICK at DEUTSCHE in San Francisco, California.  However, ROMANECK learned that DEUTSCHE had deceived him because when he went to the "investment meeting" he was unexpectedly fired by WINNICK.  When asked why, WINNICK gruffly stated "performance" then changed his reason to "market timing." ROMANECK never engaged in any wrongdoing regarding market timing.  ROMANECK told WINNICK and Human Resources Manager Kathy Spiller he was on disability leave and they would be discriminating against him under FEHA and other laws if they terminated ROMANECK when he was on medically authorized disability leave.   WINNICK got up and walked out.  A DEUTSCHE human resources representative then told ROMANECK he could resign or be fired.  ROMANECK refused to resign.

27.     In 2003, WINNICK was dismayed that the DEUTSCHE salespersons under him were earning so much in commissions.  WINNICK sought to determine a method by which he could deny the salespersons, including ROMANECK, commissions.  WINNICK then persuaded ROMANECK and the sales team to expand their sales efforts beyond just selling mutual funds to selling products to the insurance company industry.  WINNICK enthusiastically told the sales

team that they would earn lots of additional money in commissions.  ROMANECK relied on WINNICK's representations and trusted him to honor his agreement regarding his compensation.

28.     ROMANECK placed himself at risk by accepting to WINNICK's offer because previously he had focused his sales in mutual funds with significant success and WINNICK wanted him to divert his time and efforts to an entirely different industry.  When ROMANECK and his fellow salespersons were successful and WINNICK saw how much they earned, he reneged upon his agreement with ROMANECK and denied them several hundred thousand dollars in commission wages.  On March 25, 2004, ROMANECK contacted Spiller of DEUTSCHE Human Resources, requesting a meeting with her regarding WINNICK's refusal to pay his and his fellow salespersons' unpaid insurance commissions of approximately $150,000 each.  Spiller sought to avoid the issue and failed to respond to ROMANECK's inquiry.

29.     However, on April 28, 2004, WINNICK sent ROMANECK a new compensation plan, which was backdated to January 1, 2004 and reduced his commissions by sixty percent.  On the date ROMANECK was terminated, he received a check for only $27,000 for his unpaid insurance commissions instead of $150,000.  ROMANECK complained to DEUTSCHE about WINNICK's failure to compensate him as mutually agreed to, but his complaint was disregarded.  Shortly after ROMANECK's termination, he was replaced with a much younger male employee who was significantly less qualified and experienced than ROMANECK.

30.     The unlawful conduct to which ROMANECK has been subjected by DEUTSCHE has been psychologically debilitating for him.  ROMANECK has undergone extensive psychological counseling and medical treatment, including multiple pharmaceutical prescriptions to treat anxiety, emotional trauma and depression.  Additionally, DEUTSCHE knew ROMANECK was scheduled to be married on May 22, 2004 because several DEUTSCHE

employees were invited.  Despite ROMANECK's years of loyal service and high sales performance for DEUTSCHE, he received no severance pay and was terminated on May 12, 2004 just ten days before his wedding.  ROMANECK's spouse has also been extremely traumatized by DEUTSCHE's unlawful treatment of her husband and termination right before their wedding day, causing further emotional distress for ROMANECK.

31.     DEUTSCHE's New York headquarters were formerly located across the street from the World Trade Center.  After 9-11, DEUTSCHE claimed that ROMANECK's personnel file and e-mail records were destroyed due to the building's proximity to the terrorist attacks. DEUTSCHE also did not reveal other pertinent documents to the SEC by claiming they were also destroyed due to 9-11.  However, ROMANECK has knowledge that the building and its documents were not destroyed and were actually still in the building.  Following 9-11, the building was merely condemned and temporarily inaccessible due to broken glass.  The documents were not destroyed.  The national media has expressed significant interest in ROMANECK's case thus far.

## FIRST CAUSE OF ACTION

## WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY

## AGAINST DEFENDANTS DEUTSCHE, DOES I-XV AND

## CORPORATE DOES XVI-XXV

32.     Plaintiff incorporates by reference the factual allegations of paragraphs 1 through 31 above.

33.     Plaintiff's wrongful termination from his employment with DEUTSCHE was based upon defendants' violation of public policy, including but not limited to the following: the fundamental public policy against violating the Sarbanes-Oxley Act of 2002, violating 42 U.S.C.

11

1985(2) by intimidating a witness for a governmental proceeding, violating California Labor Code § 1102.5, engaging in disability and age discrimination and the fundamental public policy of equal opportunity employment, the fundamental public policy

34.     As a proximate result of defendants' wrongful acts, Plaintiff has suffered and continues to suffer substantial losses incurred in seeking substitute employment and in earnings, bonuses, deferred compensation, stock options, and other employment benefits; and has suffered and continues to suffer emotional distress in an amount according to proof at the time of trial.

35.     Defendants, and each of them, did the acts alleged herein maliciously, fraudulently and oppressively, with the wrongful intent to injure Plaintiff, from an improper and evil motive amounting to malice, and in conscious disregard of Plaintiff's rights.  The acts complained of were known to, authorized and ratified by defendants.  Plaintiff is therefore entitled to recover punitive damages from defendants as to a portion of his claims, and each of them, in an amount according to proof at the time of trial.

## SECOND CAUSE OF ACTION

## WHISTLEBLOWER RETALIATION, CAL. LABOR CODE § 1102.5

## AGAINST DEFENDANTS DEUTSCHE, DOES I-XV AND

## CORPORATE DOES XVI-XXV

36.     Plaintiff incorporates by reference the factual allegations of paragraphs 1 through 35 above.

37.     DEUTSCHE retaliated against ROMANECK for reporting the violation of state and federal rules and regulations and participating in the SEC investigation.  Plaintiff was engaged in protected activity.  Under California Labor Code §1102.5 defendants are prohibited

from retaliation against Plaintiff for opposing any practices forbidden or made unlawful under California Labor Code §1102.5.

38.     As a direct and proximate result of the willful, knowing, and intentional discrimination against Plaintiff, and the failure to act by defendants, Plaintiff has suffered mental distress, anguish, and indignation.   Plaintiff is thereby entitled to general and compensatory damages in an amount to be proven at trial.

39.     Defendants' acts alleged herein are malicious, oppressive, despicable, and in conscious disregard of Plaintiff's rights.  As such, punitive damages are warranted against defendants in order to punish and make an example of their actions.

## THIRD CAUSE OF ACTION

## DISABILITY DISCRIMINATION – FEHA – CAL. GOVT. CODE § 12940 et seq.

## AGAINST DEFENDANTS DEUTSCHE, DOES I-XV AND

## CORPORATE DOES XVI-XXV

40.     Plaintiff incorporates by reference the factual allegations of paragraphs 1 through 39 above.

41.     Defendants, through their agents and employees engaged in a pattern and practice of unlawful disability discrimination in violation of the Fair Employment and Housing Act (hereinafter referred to as "FEHA") in connection with the terms and conditions of Plaintiff's employment and discharge.

42.     At all relevant times, defendants had actual and constructive knowledge of the discriminatory conduct described and alleged herein, and condoned, ratified and participated in the discrimination.  As a result of the hostile and offensive work environment perpetrated and

maintained by defendants, and defendants' failure to protect Plaintiff from further discrimination, Plaintiff suffered severe emotional distress.

43.     Plaintiff is informed and believes and thereon alleges that in addition to the practices enumerated above, defendants, and each of them, engaged in other discriminatory practices against Plaintiff, which are not yet fully known.  At such time as said discriminatory practices become known to Plaintiff, Plaintiff will seek leave of court to amend this complaint in those regards.

44.      As a direct and proximate result of the willful, knowing, and intentional discrimination against Plaintiff, and the failure to act by defendants, Plaintiff has suffered mental distress, anguish, and indignation.  Plaintiff is thereby entitled to general and compensatory damages in an amount to be proven at trial.

45.     Defendants' acts alleged herein are malicious, oppressive, despicable, and in conscious disregard of Plaintiff's rights.  As such, punitive damages are warranted against defendants in order to punish and make an example of their actions.

## FOURTH CAUSE OF ACTION

## DISABILITY DISCRIMINATION – FAILURE TO ACCOMODATE

## FEHA – CAL. GOVT. CODE § 12940 et seq.

## AGAINST DEFENDANTS DEUTSCHE, DOES I-XV AND

## CORPORATE DOES XVI-XXV

46.     Plaintiff incorporates by reference the factual allegations of paragraphs 1 through 45 above.

47.     Under FEHA, Plaintiff suffers from a disability in that he possesses physical impairments that limit a major life activity, i.e., make achievement of a major life activity

difficult.  When symptomatic, as a result of being injured as the result of a lifting a heavy box, Plaintiff is unable to perform a variety of tasks central to her daily life such as performing several different activities that involve use of one's arm(s) and ensuing associated repercussions.

48.     Plaintiff is a qualified individual with a disability in that he is an individual with a disability who, with or without reasonable accommodation could have performed the essential functions of the employment position he desired and held.

49.     Defendants DEUTSCHE et al was aware of Plaintiff's disability when defendants terminated Plaintiff's employment.  Defendants had a duty to accommodate Plaintiff's disability and failed to accommodate said disability.

50.     Plaintiff's status as a disabled individual was one factor, which led to defendant's decision to terminate Plaintiff's employment.

51.     As a direct and proximate result of the willful, knowing, and intentional discrimination against Plaintiff, and the failure to act by defendants, Plaintiff has suffered mental distress, anguish, and indignation.   Plaintiff is thereby entitled to general and compensatory damages in an amount to be proven at trial.

52.     Defendants' acts alleged herein are malicious, oppressive, despicable, and in conscious disregard of Plaintiff's rights.  As such, punitive damages are warranted against defendants in order to punish and make an example of their actions.

## FIFTH CAUSE OF ACTION

## DISABILITY DISCRIMINATION – FAILURE TO ENGAGE IN INTERACTIVE PROCESS - FEHA – CAL. GOVT. CODE § 12940 et seq.

## AGAINST DEFENDANTS DEUTSCHE, DOES I-XV AND CORPORATE DOES XVI-XXV

53.     Plaintiff incorporates by reference the factual allegations of paragraphs 1 through 52 above.

54.     Under FEHA, Plaintiff suffers from a disability in that he possesses physical impairments that limit a major life activity, i.e., make achievement of a major life activity difficult.  When symptomatic, as a result of being injured as the result of a lifting a heavy box, Plaintiff is unable to perform a variety of tasks central to her daily life such as performing several different activities that involve use of one's arm(s) and ensuing associated repercussions.

55.     Plaintiff is a qualified individual with a disability in that he is an individual with a disability who, with or without reasonable accommodation could have performed the essential functions of the employment position he desired and held.

56.     Defendants DEUTSCHE et al was aware of Plaintiff's disability when defendants terminated Plaintiff's employment.  Defendants had a duty to engage in an interactive process with Plaintiff regarding his disability and failed to engage in said process.

57.     Plaintiff's status as a disabled individual was one factor, which led to defendant's decision to terminate Plaintiff's employment.

58.     As a direct and proximate result of the willful, knowing, and intentional discrimination against Plaintiff, and the failure to act by defendants, Plaintiff has suffered mental distress, anguish, and indignation.   Plaintiff is thereby entitled to general and compensatory damages in an amount to be proven at trial.

59.     Defendants' acts alleged herein are malicious, oppressive, despicable, and in conscious disregard of Plaintiff's rights.  As such, punitive damages are warranted against defendants in order to punish and make an example of their actions.

## SIXTH CAUSE OF ACTION

### FAILURE TO TAKE ALL STEPS - FEHA – CAL. GOVT. CODE § 12940 et seq.

### AGAINST DEFENDANTS DEUTSCHE, DOES I-XV AND

### CORPORATE DOES XVI-XXV

60.     Plaintiff hereby adopts and incorporates by reference paragraphs 1 through 58, inclusive, of this complaint and makes them a part of this instant cause of action as though fully set forth herein.

61.     The California Fair Employment and Housing Act, ("FEHA") as amended, Government Code Section 12940 makes it an unlawful employment practice for an employer to fail to take all reasonable steps necessary to prevent discrimination from occurring.

62.     By defendants' conduct, as aforesaid, and by failing to express strong disapproval of discriminatory practices, by failing to develop appropriate sanctions for discrimination, by failing to properly inform Plaintiff and other employees of their rights regarding discrimination and instructing Plaintiff and other employees of the specific process to follow in order to report discrimination, by failing to develop appropriate methods to sensitize employees/managers to practices and the gravity of consequences for doing so, and by failing to take immediate and appropriate corrective action to stop the discrimination from occurring.

63.     As a proximate result of defendants' unlawful employment practices, Plaintiff has suffered damages, including but not limited to damages for wage loss and loss of employment benefits, as well as damages for humiliation, embarrassment, damages for severe mental and emotional distress and discomfort, as well as forcing him to incur attorneys' fees, costs and certain other incidental damages, all according to proof.

64.     Defendants committed the acts alleged herein maliciously, fraudulently, and

oppressively, and with the wrongful intention of injuring Plaintiff, and acted with an improper and evil motive amounting to malice. Alternatively, defendants' despicable conduct was carried out in conscious disregard of Plaintiff's rights. Defendants' conduct was carried out by one of their managing agents who had advance knowledge of the unfitness of its decision-maker and employed them with a conscious disregard of Plaintiff's rights and/or authorized and/or ratified their conduct. As a result of defendants' conduct, Plaintiff is entitled to recover punitive damages in an amount commensurate with defendants' wealth.

**SEVENTH CAUSE OF ACTION**

**RETALIATION - FEHA – CAL. GOVT. CODE § 12940 et seq.**

**AGAINST DEFENDANTS DEUTSCHE, DOES I-XV AND**

**CORPORATE DOES XVI-XXV**

65. Plaintiff incorporates by reference the factual allegations set forth in paragraphs 1 through 64 herein.

66. Under California Government Code §12940 defendants are prohibited from retaliation against Plaintiff for opposing any practices forbidden or made unlawful under California Government Code §12940.

67. Plaintiff informed defendants of his disability and ensuing discrimination due to his disability.

68. Plaintiff is informed and believes and thereon alleges that defendants could have remedied discrimination in their work place, but chose to discriminate further against him by terminating him and denying him his full commission wages. Plaintiff was engaged in protected activity for which defendants retaliated.

69.     The close proximity in time between when Plaintiff complained of discrimination and was terminated creates an inference of retaliation.

70.     At all relevant times, defendants had actual and constructive knowledge of the retaliatory conduct described and alleged herein, and condoned, ratified and participated in the retaliation.  As a result of the retaliatory behavior perpetrated and executed by defendants, and defendants' failure to protect Plaintiff from retaliatory behavior, Plaintiff has suffered severe emotional distress, humiliation and embarrassment.  As a further proximate result of such conduct, Plaintiff has suffered loss of income, loss of advance and promotions, loss of career opportunity and loss of tangible job benefits, all in amounts to be proven at trial.

71.     Defendants' acts alleged herein are malicious, oppressive, fraudulent, despicable, and in conscious disregard of Plaintiff's rights and public policy.  As such, punitive damages are warranted against defendants in order to punish and make an example out of each of them.

### EIGHTH CAUSE OF ACTION

### AGE DISCRIMINATION - FEHA – CAL. GOVT. CODE § 12940 et seq.

### AGAINST DEFENDANTS DEUTSCHE, DOES I-XV AND

### CORPORATE DOES XVI-XXV

72.     Plaintiff incorporates by reference the factual allegations of paragraphs 1 through 71 above.

73.     Defendants, through their agents and employees engaged in a pattern and practice of unlawful age discrimination in violation of FEHA in connection with the terms and conditions of Plaintiff's employment and his termination.

74.     At all relevant times, defendants had actual and constructive knowledge of the discriminatory conduct described and alleged herein, and condoned, ratified and participated in

the discrimination. As a result of the hostile and offensive work environment perpetrated and maintained by defendants, and defendants' failure to protect Plaintiff from further discrimination, Plaintiff suffered severe emotional distress.

75. Plaintiff is informed and believes and thereon alleges that in addition to the practices enumerated above, defendants, and each of them, engaged in other discriminatory practices against Plaintiff, which are not yet fully known. At such time as said discriminatory practices become known to Plaintiff, Plaintiff will seek leave of court to amend this complaint in those regards.

76. As a direct and proximate result of the willful, knowing, and intentional discrimination against Plaintiff, and the failure to act by defendants, Plaintiff has suffered mental distress, anguish, and indignation. Plaintiff is thereby entitled to general and compensatory damages in an amount to be proven at trial.

77. Defendants' acts alleged herein are malicious, oppressive, despicable, and in conscious disregard of plaintiff's rights. As such, punitive damages are warranted against defendants in order to punish and make an example of their actions.

## NINTH CAUSE OF ACTION – INTENTIONAL INFLICTION
## OF EMOTIONAL DISTRESS – AGAINST ALL DEFENDANTS

78. Plaintiff incorporates by reference the factual allegations set forth in paragraphs 1 through 77 herein.

79. Plaintiff is informed and believes and thereon alleges that defendants, by and through its principals, agents and employees, unlawfully harassed, retaliated, pressured him to testify the way they wanted, denied him commissions, filed a false U5 Form against him, which it refuses to expunge, failed to accommodate Plaintiff's disability, tried to scapegoat

ROMANECK for DEUTSCHE's wrongdoing and terminated ROMANECK ten days before his wedding , all violation of public policy and applicable law, with conscious disregard of the result or outcome of such act.  The unlawful harassment, retaliation, conduct towards and termination of ROMANECK, due to its improper motivations and surrounding circumstances constitute extreme and outrageous conduct by the defendants, and each of them.

80.     Through the outrageous conduct described above, defendants acted with the intent to cause, and with reckless disregard for the probability of causing Plaintiff to suffer severe emotional distress.

81.     At all relevant times, defendants had actual or constructive knowledge of extreme and outrageous conduct described herein, and condoned, ratified and participated in such extreme and outrageous acts.

82.     As a direct and proximate result of defendants' willful, knowing and intentional acts, and defendants' failure to act, Plaintiff has suffered and will continue to suffer mental distress and anguish.  Plaintiff has suffered and will continue to suffer a loss of earnings, stock options, and other employment benefits and job opportunities.  Plaintiff is thereby entitled to general and compensatory damages in amount to be proven at trial.

83.     The acts of defendants, as alleged herein, were done with fraud, oppression and malice, with a conscious disregard for Plaintiff's rights; and with the intent, design and purpose of injuring Plaintiff, with an improper and evil motive amounting to malice, in conscious disregard of Plaintiff's rights.  Plaintiff is therefore entitled to recover punitive damages against defendants, and each of them.

**TENTH CAUSE OF ACTION – DEFAMATION**

**AGAINST DEFENDANTS DEUTSCHE, WINNICK, DOES I-XV AND**

## CORPORATE DOES XVI-XXV

84.    Plaintiff incorporates by reference the factual allegations of paragraphs 1 through 83 herein.

85.    Plaintiff is informed and believes that defendants, and each of them, by the herein-described acts, conspired to, and in fact, did negligently, recklessly, and intentionally caused excessive and unsolicited internal and external publications of defamation, of and concerning Plaintiff, to third persons and to the community. These false and defamatory statements included express and implied: accusations that Plaintiff engaged in improper professional conduct.

86.    Plaintiff is informed and believes that these publications were outrageous, negligent, reckless, intentional, and maliciously published by defendants, and each of them. Plaintiff is informed and believes that the negligent, reckless, and intentional publications by defendants, and each of them, were published by defendants, their agents and employees, and recipients in the community.  Plaintiff hereby seeks damages for these publications and all foreseeable republications discovered up to the time of trial.

87.    During the above-described time-frame, defendants, and each of them, conspired to, and in fact, did negligently, recklessly, and intentionally cause excessive and unsolicited publication of defamation, of and concerning Plaintiff, to third persons, who had no need or desire to know.  Those third persons to whom these defendants published this defamation are believed to include, but are not limited to, other agents and employees of defendants, and each of them, and the community, all of whom are known to defendants, and each of them, but unknown at this time to Plaintiff.

88.     The defamatory publications consisted of oral and written, knowingly false and unprivileged communications, tending directly to injure Plaintiff and Plaintiff's personal, business, and professional reputation.  These publications included the following false and defamatory statements (in violation of Civil Code §§ 45 and 46(3)(5)) with the meaning and/or substance that Plaintiff: violated company policies and California law.  These and similar statements published by defendants, and each of them, expressly and impliedly asserted that Plaintiff was in violation of California law.

89.     Plaintiff is informed, believes and fears that these false and defamatory per se statements will continue to be published by defendants, and each of them, and will be foreseeably republished by their recipients, all to the ongoing harm and injury to Plaintiff's business, professional, and personal reputations. Plaintiff also seeks redress in this action for all foreseeable republications, including his own compelled self-publication of these defamatory statements.

90.     The defamatory meaning of all of the above-described false and defamatory statements and their reference to Plaintiff, were understood by these above-referenced third person recipients and other members of the community who are known to defendants, and each of them, but unknown to Plaintiff at this time.

91.     None of defendants' defamatory publications against Plaintiff referenced above are true.

92.     The above defamatory statements were understood as assertions of fact, and not as opinion.  Plaintiff is informed and believes this defamation will continue to be negligently, recklessly, and intentionally published and foreseeably republished by defendants, and each of

them, and foreseeably republished by recipients of defendants' publications, thereby causing additional injury and damages for which Plaintiff seeks redress by this action.

93.     Each of these false defamatory per se publications were negligently, recklessly, and intentionally published in a manner equaling malice and abuse of any alleged conditional privilege, which Plaintiff denies existed, since the publications, and each of them, were made with hatred, ill will, and an intent to vex, harass, annoy, and injure Plaintiff in order to justify the illegal and cruel actions of defendants, and each of them, to cause further damage to Plaintiff's professional and personal reputation, to cause him to be fired, to justify his firing and to retaliate against Plaintiff for prior ill will, rivalry, and disputes in retaliation for his objections to unsafe and improper treatment of patients.

95.     Each of these publications by defendants, and each of them, were made with knowledge that no investigation supported the unsubstantiated and obviously false statements. The defendants published these statements knowing them to be false, unsubstantiated by any reasonable investigation and the product of hostile witnesses.  These acts of publication were known by defendants, and each of them, to be negligent to such a degree as to be reckless.  In fact, not only did defendants, and each of them, have no reasonable basis to believe these statements, but they also had no belief in the truth of these statements, and in fact knew the statements to be false.  Defendants, and each of them, excessively, negligently, and recklessly published these statements to individuals with no need to know, and who made no inquiry, and who had a mere general or idle curiosity of this information.

96.     The above complained-of publications by defendants, and each of them, were made with hatred and ill will towards Plaintiff and the design and intent to injure Plaintiff, Plaintiff's good name, his reputation, employment and employability.  Defendants, and each of

them, published these statements, not with an intent to protect any interest intended to be protected by any privilege, but with negligence, recklessness and/or an intent to injure Plaintiff and destroy his reputation.  Therefore, no privilege existed to protect any of the defendants from liability for any of these aforementioned publications or republications.

97.     As a proximate result of the publication and republication of these defamatory statements by defendants, and each of them, Plaintiff has suffered injury to his personal, business and professional reputation including suffering embarrassment, humiliation, severe emotional distress, shunning, anguish, fear, loss of employment, and employability, and significant economic loss in the form of lost wages and future earnings, all to Plaintiff's economic, emotional, and general damage in an amount according to proof.

98.     Defendants, and each of them, committed the acts alleged herein recklessly, maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Plaintiff, for an improper and evil motive amounting to malice, and which abused and/or prevented the existence of any conditional privilege, which in fact did not exist, and with a reckless and conscious disregard of Plaintiff's rights.  All actions of defendants, and each of them, their agents and employees, herein alleged were known, ratified and approved by the defendants, and each of them.  Plaintiff thus is entitled to recover punitive and exemplary damages from defendants, and each of them, for these wanton, obnoxious, and despicable acts in an amount based on the wealth and ability to pay according to proof at time of trial.

99.     WHEREFORE, Plaintiff requests relief as hereinafter provided.

**ELEVENTH CAUSE OF ACTION – CAL. LABOR CODE § 1050**

**AGAINST DEFENDANTS DEUTSCHE, WINNICK, DOES I-XV AND**

**CORPORATE DOES XVI-XXV**

100.     Plaintiffs incorporate by reference the factual allegations set forth in paragraphs 1 through 99 herein.

101.     Defendants, in doing the things herein complained of knew, or could reasonably foresee, that Plaintiff would be forced to republish his wrongful and libelous allegations against Plaintiff of improper professional conduct to each and every prospective Employer of whom Plaintiff would seek employment and that such compelled disclosure would prevent Plaintiff from gaining any further employment and was, therefore, violative of Plaintiff's rights under Labor Code §1050.

102.     Defendants failed to take all reasonable steps within their power to prevent such violations and, therefore, were violative of Plaintiff's rights under Labor Code §1052.

103.     In doing the acts herein complained of, defendants caused Plaintiff to suffer preventable economic and personal injury damages in an amount according to proof and, therefore, are liable to Plaintiff for treble damages under the provisions of Labor Code §1054.

## TWELFTH CAUSE OF ACTION - BREACH OF IMPLIED CONTRACT - AGAINST ALL DEFENDANTS, DOES I-XV AND CORPORATE DOES XVI-XXV

104.     Plaintiff incorporates by reference the factual allegations set forth in paragraphs 1 through 103 herein.

105.     Plaintiff agreed to divert and expand his sales efforts from mutual funds to insurance company products pursuant to an implied contract with WINNICK stemming from repeated reassurances that Plaintiff would earn more money.  Defendants' actions led ROMANECK to believe he would continue to have a job and a future with the company if he accepted WINNICK's offer and additional facts as alleged above.

106.     At all relevant times alleged herein, Plaintiff performed his obligations under his contract with defendants.  defendants by and through their agents and employees, breached its

oral contractual commitments to Plaintiff by failing to provide Plaintiff with the commission wages it owed him.

107.   Plaintiff justifiably relied upon the oral representations of defendants.

108.   As a direct and proximate result of defendants' breach, Plaintiff has suffered loss of wages and benefits, loss of future wages and benefits and emotional distress in an amount to be proven at the time of trial.

**THIRTEENTH CAUSE OF ACTION**

**BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**

**AGAINST ALL DEFENDANTS, DOES I-XV AND CORPORATE DOES XVI-XXV**

109.   Plaintiff incorporates by reference the factual allegations set forth in paragraphs 1 through 108 herein.

110.   Implied in every contract is a covenant of good faith and fair dealing.  All parties to a contract owe each other a duty to refrain from acts, which would prevent or unduly hinder the other party's performance of the contract.

111.   Defendants, by and through their agents and employees, breached this covenant by subjecting Plaintiff to actions, which were in violation of the contract, statutes, ordinances, regulations, and public policy of the State of California and by wrongfully terminating Plaintiff.

112.   Absent defendants' decision, through their agents and employees, to make Plaintiff work in conditions that defendants created, maintained and ratified, which were in violation of the statutes, ordinances, regulations, and public policy of the State of California, and absent defendants' decision to wrongfully terminate Plaintiff, Plaintiff would have fully performed his job duties.

113.   Defendants' actions thereby constitute a breach of the implied covenant of good

faith and fair dealing and Plaintiff is entitled to general and compensatory damages in an amount provable at the time of trial.

## FOURTEENTH CAUSE OF ACTION – MISREPRESENTATION / FRAUD / DECEIT AGAINST ALL DEFENDANTS, DOES I-XV AND CORPORATE DOES XVI-XXV

114.    Plaintiff incorporates by reference each of the allegations of paragraphs 1-113, inclusive, as fully set forth herein.

115.    Upon his employment with defendants Plaintiff was given written promise that if he met standards in performance and efficiency, he would be paid commissions and bonuses commensurate with his sales efforts on the Manulife Lifestyle product group and other financial products from other companies.

116.    Such promises were a material matter and integral to the terms and conditions of Plaintiff's continued employment with DEUTSCHE.

117.    Plaintiff acted in justifiable reliance on defendants promises by continuing to work for defendants and his forbearance in accepting other industry employment.

118.    Defendant WINNICK was charged by corporate defendants to keep accurate records of employees' sales performance and efficiency, so that qualifying employees would be paid under defendant companies' incentive and bonus programs.

119.    Defendant WINNICK had a fiduciary duty to accurately record those records.

120.    Instead of accurately recording Plaintiff's sales performance and efficiency records, WINNICK intentionally falsified and misrepresented those records.

121.    Plaintiff is informed and believes, and on that basis alleges, that WINNICK acted willfully, knowingly, and intentionally in engaging in the pattern of conduct described herein. Plaintiff and all others similarly situated are informed and believe, and on that basis allege, that

in doing the acts and in engaging in the conduct herein alleged, defendant acted in conscious disregard of the rights of Plaintiff and engaged in despicable conduct which has subjected Plaintiff to cruel and unjust hardship.

122.    Further, Plaintiff is informed and believes, and on that basis alleges, that defendant in doing the acts and engaging in the conduct herein alleged, acted with a willful and conscious disregard for the legal rights of others.  Because defendant has acted with such oppression, fraud, and malice, Plaintiff is entitled to punitive damages, pursuant to Civil Code Sections §§1708.7(c) and 3294 in an amount that will punish said defendants for the conduct described herein and in an amount that will deter him and others from engaging in similar conduct in the future.

123.    By reason of defendants' misrepresentations, and as a proximate result of those representations, Plaintiff has suffered the damages as alleged herein and below.

WHEREFORE, Plaintiff prays judgment against defendants, and each of them, as set forth below.

### PRAYER FOR RELIEF

WHEREFORE, PLAINTIFF prays for relief as follows:

1.    For general damages according to proof, however, no less than the jurisdictional limit of this court;

2.    For special damages in amounts according to proof;

3.    For punitive damages in amounts according to proof;

4.    For attorneys' fees as provided by law;

5.    For interest as provided by law;

6.      For cost of suit incurred herein; and

7.      For such other and further relief as the Court deems fair and just.

Dated:  May 19, 2005                              THE ARMSTRONG LAW FIRM


By_____
KELLY H. ARMSTRONG
Attorney for Plaintiff
LAWRENCE ROMANECK